IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

S.F., as Parent and Natural Guardian of
S.E.F., an Infant,

                    Plaintiff,                    **COMPLAINT**

vs.                                        **JURY TRIAL DEMANDED**

ARCHER-DANIELS-MIDLAND            **Civil Action No. : _____**
COMPANY, CARGILL, INC.,
INGREDION INC.,
PENFORD PRODUCTS CO.,
TATE & LYLE INGREDIENTS AMERICAS, LLC and
ROQUETTE AMERICA, INC.,

                    Defendants.

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over the subject matter presented by this Complaint.

2. Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because Plaintiff is a resident of Erie County New York and a substantial part of the events or omissions giving rise to the Plaintiff's claims occurred in this District and Defendants are subject to personal jurisdiction in this District.

3. This Court has jurisdiction over this lawsuit on account of diversity jurisdiction under 28 U.S.C § 1332.

## PARTIES

### Plaintiffs

4. The Infant Plaintiff, S.E.F., is fourteen years old having been born in 1998 and lives with her mother, S.F., in the County of Erie and State of New York.

### Defendants

5. The Defendant, Archer-Daniels-Midland Company ("ADM"), is a foreign business corporation authorized to do business in the State of New York.

6. The Defendant, Cargill, Inc. ("CARGILL"), is a foreign business corporation authorized to do business in the State of New York.

7. The Defendant, Ingredion Inc. ("INGREDION"), is a foreign business corporation authorized to do business in the State of New York.

8. The Defendant, Penford Products Co. ("PENFORD"), is a foreign business corporation authorized to do business in the State of New York.

9. The Defendant, Tate & Lyle Ingredients Americas, LLC ("TATE & LYLE"), is a foreign limited liability company authorized to do business in the State of New York.

10. The Defendant, Roquette America, Inc. ("ROQUETTE"), is a Delaware Corporation with a principal place of business located at 1417 Exchange St., Keokuk, IA 52632.

11. Upon information and belief, Defendant, ROQUETTE AMERICA, INC., is a foreign corporation not authorized to do business in the State of New York.

12. Upon information and belief, Defendant, ROQUETTE AMERICA, INC., has committed tortuous acts outside the State of New York causing injury to the Infant Plaintiff S.E.F in the State of New York.

13. Upon information and belief, presently and at all times herein mentioned,

Defendant, ROQUETTE AMERICA, INC., regularly solicited business, engaged in persistent courses of conduct and derived substantial revenue from its products being used and consumed in the State of New York.

14. Upon information and belief, presently and at all times herein mentioned, Defendant, ROQUETTE AMERICA, INC., knew and reasonably expected its actions and products to have consequences in the State of New York.

15. Upon information and belief, presently and at all times herein mentioned, Defendant, ROQUETTE AMERICA, INC., derived substantial revenue from interstate and international commerce.

16. Upon information and belief, presently and at all times herein mentioned, Defendant, ROQUETTE AMERICA, INC., contracted and transacted business to supply goods and services in the State of New York.

## FACTUAL BACKGROUND

### High Fructose Corn Syrup

17. High Fructose Corn Syrup ("HFCS") is a totally "man-made" product that was first synthesized by the Japanese for commercial use within the processed food industry in the late 1960s.

18. HFCS is not a natural product. It cannot simply be extracted from an ear of corn. Rather, GMO corn is made into corn starch. This composition is chemically and enzymatically transformed into a corn syrup containing up to 90% fructose. It is once again manipulated by adding back glucose making it HFCS containing from 90%, 70%, 55%, 42% fructose or some other percentage combination which is then sold and distributed into the stream of commerce.

19. The glucose and fructose that primarily comprise HFCS are a monosaccharide lacking the covalent molecular bond found in the organic sucrose molecule

20. The fructose in HFCS is a contributing cause of metabolic syndrome in humans. Unlike glucose, which can be metabolized by all organs, fructose is primarily metabolized by the liver.

21. Among the negative consequences of increased consumption of fructose include depleting the liver cells of adenosine triphosphate (ATP) which leads to increased production of uric acid.

22. Fructose does not go to glycogen but rather straight to the mitochondria and forms acetyl-CoA, often exceeding the mitochondria's ability to metabolize it. Upon excess acetyl-CoA leaving the mitochondria, it is metabolized into fat.

23. Fructose activates a particular liver enzyme which acts as a bridge between liver metabolism and inflammation. This inactivates a key messenger of insulin action with leads to liver insulin resistance.

24. The lack of insulin effects in the liver deprives the body of its ability to keep glucose levels down, resulting in increased blood glucose levels which leads to type 2 diabetes.

25. Liver insulin resistance causes and forces the pancreas to release extra insulin, thereby forcing energy into fat cells, particularly visceral fat which is more associated with metabolic disease.

26. The fructose in HFCS does not stimulate an insulin response such that leptin does not rise. High insulin blocks the leptin signal, driving orexigenesis so that individuals still feel hungry even though they have eaten.

27. High insulin blocks leptin signaling which causes the hypothalamus to register a

false sense of "starvation."  The fructose in HFCS, therefore "tricks" the brain into wanting more food and stimulates excessive and continued consumption.

28.     HFCS bypasses the insulin-driven satiety system, suppressing "the degree of satiety" that would normally result from a meal of glucose or sucrose, thereby causing and contributing to over consumption on a chronic basis with the adverse effects therefrom including the development of type 2 diabetes.

29.     Long-term fructose consumption generates liver insulin resistance and causes chronic hyperinsulinemia, excessively high blood insulin, which interferes with leptin signaling and promotes further food intake by preventing dopamine clearance.

30.     Fructose intake does not decrease ghrelin, a peptide produced in the stomach which normally peaks at the time of voluntary food consumption and decreases after food consumption.

31.     Because insulin and leptin act as key afferent signals in the regulation of food intake and body weight, dietary fructose contributes to increased energy (caloric) intake with resultant weight gain and the development of type 2 diabetes as well as increasing hypertension and accelerating endothelial dysfunction.

32.     Fructose does not stimulate insulin secretion or enhance leptin production.

33.     Sucrose and HFCS have different metabolic effects including that the fructose content of HFCS-55 is slightly higher than in sucrose; fructose is absorbed further down the intestine than glucose and much of its metabolism occurs in the liver.

34.     The digestion, absorption, and metabolism of fructose differs from that of glucose, *inter alia*, for example, the hepatic metabolism of fructose favors *de novo* lipogenesis.

35.     Fructose is metabolized differently than glucose and, as a result, can lead to

insulin resistance, a precursor to type 2 diabetes.

36. Fructose contributes to breakdown of the intestinal barrier contributing to "leaky gut," increased inflammation, worsens insulin resistance and drives insulin levels higher.

37. Fructose is not metabolized in the brain.

38. Fructose is a major cause of metabolic syndrome and type 2 diabetes.

39. The free fructose in HFCS is increased in glycerol and fatty acids that are absorbed by adipose tissue.

40. HFCS is a toxin.

41. The Maillard reaction from fructose, which is many times faster than with glucose, makes bread crusts browner, cookies softer, everything sweeter and longer lasting. This reaction also accelerates cellular aging n the human body.

42. High Fructose Corn Syrup is a commercial sweetener used in a variety of products, the use and consumption of which has become nearly omni present in American foods and beverages. For example, the use of HFCS increased by over 1000% just between 1970 and 1990. HFCS has become and is a staple in food and beverage production, particularly in the United States.

43. Since 1970, coinciding with the advent and increasing and pervasive commercial use of HFCS, type 2 diabetes rates in the United States have skyrocketed.

44. Since its introduction into the commercial and public food supply, including use in foods consumed by infants, the consumption of HFCS has far exceeded changes in the intake of any other food or food group. HFCS presently represents greater than 40% of caloric sweeteners added to foods and beverages and, as of 2004, was the sole caloric sweetener in soft drinks in the United States. HFCS sweetened beverages and foods contribute to caloric

overconsumption.

45. Upon information and belief, there is a reassessment of HFCS that is causing a growing number of food and beverage producers to replace it with sugar.  In 2010, ConAgra Foods Inc. removed high fructose corn syrup from its Hunt's brand ketchup and PepsiCo Inc. has removed all high fructose corn syrup from their sports drink Gatorade and replaced it with sugar.

46. Upon information and belief, the Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., individually and in conjunction with the Corn Refiners Association ("CRA") have crafted a publicity campaign with a variety of different strategies directed at and falsely promoting HFCS as "natural". Defendants and the CRA have and are publicly asserting an equivalency between HFCS and sugar.  Specifically, they claim that "sugar is sugar" and "your body can't tell the difference". Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., and the CRA claim that HFCS is "nutritionally the same as table sugar."

47. Upon information and belief, the CRA and Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., have expended more than $30 million over the last few years in an ad campaign called "Sweet Surprise" that attempts to recast HFCS as a natural product that is "natural, nutritionally the same as table sugar and has the same number of calories."

48. Upon information and belief, Defendants', ARCHER-DANIELS-MIDLAND

COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., and CRA's branding efforts promoting HFCS as "natural", despite the absence of any naturally occurring fructose in corn or corn starch and the fact that HFCS is a man-made product that did not even exist in commerce until the late 1960s, is factually and literally a false statement that intentionally misleads, misinforms and confuses consumers.

49. Defendants', ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., assertions the HFCS or "corn sugar" is nutritionally the same as sugar and is handled in the same way by the body are also literally false and misleading to consumers generally, the Infant Plaintiff, S.E.F., and her parent, S.F. specifically.

50. The foregoing claims are particularly egregious since scientific studies demonstrate clear molecular differences between HFCS and sugar as well as clear differences in how the human body processes the respective substances. Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC. resort to literally false and misleading statements that harm and confuse consumers including the Infant Plaintiff, S.E.F., and her parent, S.F.

51. Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., call HFCS "corn sugar" in advertising and in pricing sheets for their food ingredient customers and have began

using "corn sugar" in advertising and other documentation.

52. Upon information and belief, the "corn sugar" and "sweet surprise" campaign have garnered more than 1.6 billion impressions in major broadcast and print media. Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., and the CRA have run national, "educational" television commercials that equate HFCS and corn sugar. These commercial have earned in excess of 2 billion impressions since 2010.

53. Specifically, *www.corn.org* and *www.sweetsurprise.com* websites claim:

- "It is important that consumers recognize added sugars in the diet. Despite its confusing name, high fructose corn syrup is simply corn sugar – or an added sugar in the diet."

- "High fructose corn syrup is simply a kind of corn sugar. It has the same number of calories as sugar and is handled similarly to the body."

- "High fructose corn syrup is simply a kind of corn sugar that is handed by your body like sugar or honey."

- "Whether it is corn sugar or cane sugar, your body can't tell the difference. Sugar is sugar."

54. Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC. and ROQUETTE AMERICA, INC. have been and are using "corn sugar" as a synonym for HFCS in their marketing materials, including their price lists.

55. Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., since their

introduction of HFCS into the food chain and system, have made and continue to make both omissions and misrepresentations and literally false and/or misleading representations of "fact" in their advertising and/or promotion in commerce regarding HFCS as well as concealing the science and consequences of use and ingestion of their product.

56. Upon information and belief the aforementioned claims and representations by Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., are literally false or, at best, reckless and misleading in light of the irrefutable molecular differences between the free-floating monosaccharides fructose and glucose in HFCS and the bonded disaccharide sucrose, as well as the scientific studies and analyses.

**AS AND FOR A FIRST
CAUSE OF ACTION, PLAINTIFFS ALLEGE:**

**Strict Products Liability**

57. Upon information and belief, presently and at all times mentioned herein, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., were manufacturers of High Fructose Corn Syrup (HFCS).

58. Upon information and belief, HFCS is a product that is defective and unreasonably dangerous in that it is harmful to consumers, including the Infant Plaintiff S.E.F. herein, even when used in its intended manner and for its reasonably foreseeable purposes.

59. Upon information and belief, at all times mentioned herein, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and

ROQUETTE AMERICA, INC., manufactured a product, High Fructose Corn Syrup, that was not reasonably safe and not fit for the ordinary purposes for which it was used.

60. Upon information and belief, Defendants', ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., product HFCS is so likely to be harmful that a reasonable person having actual knowledge of the potential of HFCS for producing injury would have concluded that it should not have been marketed and inserted into the food chain as it was.

61. Upon information and belief, at all times herein mentioned Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., manufacturers knew or should have known of the potential for harm upon the use of their product, HFCS.

62. Upon information and belief, at all times herein mentioned Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., were under a duty to warn consumers of the hazards accompanying consumption and ingestion of their product, HFCS.

63. Upon information and belief, at all times herein mentioned Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC. knew or should have known of the latent dangers to consumers in consuming and ingesting their product, HFCS.

64.     Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., failed to keep abreast of developments and research in the field of nutrition and/or were aware of the negative and harmful consequences of the use and ingestion of HFCS long-term including contributing to the development of and causing type 2 diabetes but have and are ignoring and/or obfuscating the facts such that Defendants are responsible for the continued promotion, production, consumption and failure to warn regarding HFCS and the consequences of consumption and ingestion thereof.

65.     Plaintiffs had no knowledge of the aforesaid defects, negative consequences and latent effects of consumption of HFCS including that it contributing to the development of type 2 diabetes nor even which food products contained same, in part due to the actions and lack thereof on the part of the Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., and was not due to any negligence or lack of due diligence by the Infant Plaintiff.

66.     As a result of the foregoing, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., are strictly liable in tort.

67.     Upon information and belief, Article 16 of the NY CPLR does not apply to the within action and/or this action falls within one of the exceptions thereto.

**INJURIES**

68. As a result of the foregoing and as a direct and proximate result of the Defendants actions, the Infant Plaintiff, S.E.F., has sustained severe and serious permanent injuries including type 2 diabetes, loss of enjoyment of life, pain and suffering, emotional distress, will incur future lifelong and permanent medical complications including the probability of surgery and shortened life expectancy, will incur medical expenses and will be required to comply with rigorous dietary and pharmaceutical restrictions for her entire life, all to her damage in the sum of $5,000,000.

## AS AND FOR A SECOND
## CAUSE OF ACTION, PLAINTIFFS ALLEGE:

### Failure to Warn

69. The Plaintiffs repeat and reallege those allegations set forth in Paragraphs "1" through "68" of the Complaint with the same force and effect as fully set forth herein at length.

70. As a result of the foregoing, the infant Plaintiff unknowingly consumed foods in many forms, all of which contained HFCS and, though sometimes those processed foods included on the label HFCS as an ingredient, sometimes the product was misleadingly labeled as merely containing "fructose", "corn sweetener", "corn syrup" and "corn sugar" and said products failed to have any accompanying warnings of the inherent dangers of consuming HFCS.

71. Upon information and belief, presently and at all times mentioned herein Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., had a duty to warn Plaintiff and others similarly situated and users of its product of the latent dangers including development of type 2 diabetes from using and consuming HFCS.

72. Upon information and belief, presently and at all times herein mentioned,

Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., knew and/or should have known that HFCS was a cause of type 2 diabetes.

73. As a result of the foregoing and as a direct and proximate result of the Defendants actions, the Infant Plaintiff, S.E.F., has sustained severe and serious permanent injuries including type 2 diabetes, loss of enjoyment of life, pain and suffering, emotional distress, will incur future, lifelong and permanent medical complications including the probability of surgery and shortened life expectancy, will incur medical expenses and will be required to comply with rigorous dietary restrictions for her entire life all to her damage in the sum of $5,000,000.

## AS AND FOR A THIRD
## CAUSE OF ACTION, PLAINTIFFS ALLEGE:

### Negligence

74. The Plaintiffs repeat and reallege those allegations set forth in Paragraphs "1" through "73" of the Complaint with the same force and effect as fully set forth herein at length.

75. Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., were negligent and careless in their manufacturing, marketing, distribution, warning, testing and instructions to purchasers and consumers of the risks associated with consumption of their product, HFCS, and were otherwise careless and negligent.

76. As a result of the foregoing and as a direct and proximate result of the Defendants actions, the Infant Plaintiff, S.E.F., has sustained severe and serious permanent injuries including

type 2 diabetes, loss of enjoyment of life, pain and suffering, emotional distress, will incur future, lifelong and permanent medical complications including the probability of surgery and shortened life expectancy, will incur medical expenses and will be required to comply with rigorous dietary and pharmaceutical restrictions for her entire life all to her damage in the sum of $5,000,000.

### AS AND FOR A FOURTH CAUSE OF ACTION, PLAINTIFFS ALLEGE:

**Gross Negligence, Willful, Wanton and Reckless Conduct**

77. The Plaintiffs repeat and reallege those allegations set forth in Paragraphs "1" through "76" of the Complaint with the same force and effect as fully set forth herein at length.

78. Upon information and belief, presently and at all times mentioned herein, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., individually and in concert with others in the processed food and beverage industry have knowingly acted and continue to act deliberately, willfully, knowingly and with malice and wanton and reckless disregard of the Infant Plaintiff's and other consumers' health and well being after being put on notice of the likely and actual adverse effect of consumers using and consuming their product, to wit, HFCS, concealing and intentionally obfuscating that which they knew and now know to be defective, dangerous, life-threatening and a cause of type 2 diabetes.

79. Upon information and belief, presently and at all times mentioned herein, Defendants', ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and

ROQUETTE AMERICA, INC., acts and omissions were knowing and intentional, without regard to consequences to consumers using and consuming their product HFCS, were motivated solely and only by monetary concerns and corporate profits without regard to any untoward and/or latent and long term consequences to consumers including the Infant Plaintiff S.E.F. such that Defendants conduct was willful, wanton and reckless and constitutes gross negligence such that punitive damages are warranted and appropriate.

80. Upon information and belief, Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., have acted and continue to act with malice, deliberately, willfully, knowingly, wantonly and with flagrant disregard of and for the safety and health of persons including infants and the Infant Plaintiff S.E.F. herein who have been and will be harmed by the use of their product.

81. As a result of the foregoing and as a direct and proximate result of the Defendants actions, the Infant Plaintiff, S.E.F., has sustained severe and serious permanent injuries including type 2 diabetes, loss of enjoyment of life, pain and suffering, emotional distress, will incur future, lifelong and permanent medical complications including the probability of surgery and shortened life expectancy, will incur medical expenses and will be required to comply with rigorous dietary and pharmaceutical restrictions for her entire life all to her damage in the sum of $5,000,000.

## JURY DEMAND

82. Plaintiff, S.F. as Parent and Natural Guardian of S.E.F., an Infant, respectfully asserts her right to a trial by jury of all issues triable.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, S.F. as Parent and Natural Guardian of S.E.F., an Infant, prays for judgment against Defendants, ARCHER-DANIELS-MIDLAND COMPANY, CARGILL, INC., INGREDION INC., PENFORD PRODUCTS CO., TATE & LYLE INGREDIENTS AMERICAS, LLC and ROQUETTE AMERICA, INC., and each of them, in the sum of $5,000,000 in damages together with such other exemplary and punitive damages as may be just and proper together with costs and disbursements.

DATED:   BUFFALO, NEW YORK
         June 17, 2013

                                    Respectfully submitted,


                                     s/ J. Michael Hayes
                                    J. Michael Hayes, Esq.
                                    Law Offices of J. MICHAEL HAYES
                                    Attorney for Plaintiffs
                                    69 Delaware Avenue - Suite 1111
                                    Buffalo, New York 14202
                                    (716) 852-1111