UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
─────────────────────────────────

S.F., as parent and natural guardian of
S.E.F., an infant,

                Plaintiff,

  v.                                        **DECISION AND ORDER**
                                                      13-CV-634S

ARCHER-DANIELS-MIDLAND COMPANY,
CARGILL, INC., INGREDION INCORPORATED,
PENFORD PRODUCTS CO.,
TATE & LYLE INGREDIENTS AMERICAS,
LLC, and ROQUETTE AMERICA, INC.,

                Defendants.
─────────────────────────────────

## I.  INTRODUCTION

The Plaintiff asserts that high-fructose corn syrup is a toxic substance and that its manufacturers are liable under the tort doctrines of strict liability, negligence, and failure to warn. Both the true Plaintiff, S.E.F, and her mother, S.F., who brings this claim on her daughter's behalf, are identified only by their initials to protect the daughter's identity.[1] Invoking this Court's diversity jurisdiction, Plaintiff, who was fourteen years old at the time the complaint was filed, asserts that high-fructose corn syrup, which she consumed in familiar foods like Pepsi and McDonald's hamburger buns, was a substantial factor in causing her to develop Type 2 diabetes.

All Defendants – five manufacturers of high-fructose corn syrup (commonly referred to in the industry by the initialism "HFCS") – now move to dismiss this action under Federal

---

[1] Under Rule 5.2(a) of the Federal Rules of Civil Procedure, only a minor's initials should be used in all publicly filed documents. Further, "[s]ince a parent must proceed on behalf of a minor child, the protection afforded to the minor would be eviscerated unless the parent was also permitted to proceed using initials." P.M. v. Evans-Brant Cent. Sch. Dist., No. 08-CV-168A, 2008 WL 4379490, at *3 (W.D.N.Y. Sept. 22, 2008) (Schroeder, Jr., M.J.) (Report and Recommendation adopted in full).

Rule of Civil Procedure Rule 12(b)(6). They contend that Plaintiff has failed to state a plausible claim for relief. More to the point, they argue that Plaintiff cannot causally connect HFCS to the disease; that, by grouping all the manufacturers together as one unit, she cannot connect the alleged harm to any one particular defendant; and last, that federal food-additive laws preempt her claim.

In response to Defendants' motions to dismiss, Plaintiff filed required briefing and moved for leave to amend her complaint; she contends that the proffered amendments cure any deficiencies highlighted by Defendants in their motions. Defendants disagree. The proposed amendments, they argue, are futile and do not save her deficient claim.

As an initial matter, this Court will grant the motion to amend and construe the motion to dismiss against the amended complaint, which Plaintiff attached to her motion for leave to file it. The new complaint adds context and detail to her claim; it does not add new causes of action. And Defendants – in what effectively resulted in another round of briefing on the motions to dismiss – have responded to the amended complaint, eliminating the potential for any undue prejudice they may have suffered by virtue of the amended pleading. See, e.g., Foman v. Davis, 371 U.S. 178, 182, 83 S. Ct. 227, 230, 9 L. Ed. 2d 222 (1962).

Despite this, for the reasons discussed below, the amended complaint must be dismissed.

## II. BACKGROUND

**A.     High-fructose corn syrup & Plaintiff's claim**

Some facts are universally regarded as accurate. For one, as the name suggests, high-fructose corn syrup is derived from corn; though it is an over-simplification, HFCS is essentially made by exposing cornstarch to various enzymes and water. That process ultimately produces a sweet aqueous solution consisting of fructose and glucose. Fructose is often (though not always) found in slightly higher concentrations in HFCS than it is in sucrose – or simple table sugar, which has a 1:1 ratio of glucose and fructose.[2] Other, less common forms of HFCS, however, can contain much more fructose than sugar. (See Am. Compl. ¶ 25.)

HFCS was first integrated into the American food supply in the 1970s. (Id. ¶ 21) Because of the syrup's lower cost, it is commonly used as a substitute for sugar in processed foods. (Id. ¶ 23.) The Coca-Cola Company and PepsiCo., for example, began using HFCS instead of sugar in many of their beverage products in the 1980s. (Id. ¶ 23). There is no dispute that each defendant manufactures HFCS. There is also no dispute that fructose itself is an organic compound found naturally in a wide variety of fruits – like grapes, pears, and figs.

Other facts, this Court is aware, are vigorously contested by those in the science and nutrition communities, as well as by close observers of what has become a developing

---

[2] According to a study published in the American Journal of Clinical Nutrition, it is called "high" fructose corn syrup because there is more fructose than ordinary corn syrup, which contains more glucose and is not as sweet as sugar or HFCS. John S. White, *Straight talk about high-fructose corn syrup: what it is and what it ain't* 88, No. 6 Am. J. Clin. Nutr. 1716–21 (2008), available at http://ajcn.nutrition.org/content/88/6/1716S.full

controversy.[3] But that debate is largely immaterial to the motion before this Court because facts alleged in Plaintiff's complaint (though not labels or legal conclusions) must be accepted as true for the purposes of resolving this motion. See Ashcroft v. Iqbal, 556 U.S. 662, 668, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). This Court is not in a position to make findings of fact on the hotly debated health effects of sugar and high-fructose corn syrup. Rather, this Court summarizes the allegations here for the purposes of context and background.

To that end, Plaintiff alleges that fructose is metabolized differently than glucose – "almost entirely in the liver" – and that it can therefore lead to insulin resistance. (Am. Compl. ¶ 28.) This lack of insulin, she alleges, creates rising levels of glucose, which in turn, leads to Type 2 diabetes. High-fructose corn syrup, Plaintiff also alleges, "by-passes the insulin-driven satiety system, suppressing the degree of satiety that would normally result from a meal of glucose or sucrose." (Id. ¶ 35.) High-fructose corn syrup, in short, makes Plaintiff and others feel hungry when they should feel full. This "stimulates excessive and continued consumption." (Id. ¶ 46.) By extension, fructose is a "major cause of metabolic syndrome and Type 2 diabetes." (Id. ¶ 52.)

Plaintiff therefore alleges that her consumption of HFCS, supplied by Defendants and used in various end-products, such as popular soft drinks that "contain[] an average of 64-65% fructose" (id., ¶ 66), caused, or at least was a substantial factor in causing, the disease from which she now suffers – Type 2 diabetes.

---

[3]The Corn Refiner's Association's website, http://sweetsurprise.com, urges its visitors to learn why "HFCS has become a frequent topic of health discussions." The association represents companies that make the syrup.

**B.     Procedural history**

Plaintiff filed a complaint in this Court on June 17, 2013. After the parties stipulated to an extension, Archer-Daniels-Midland Company, Cargill, Inc., Ingredion, Inc., and Tate & Lyle Ingredients Americas, LLC filed a joint motion to dismiss on August 30, 2013. Roquette America, Inc. filed a separate motion on September 13, 2013, but it largely incorporated the arguments made in the earlier motion.

Plaintiff then moved to amend her complaint on September 25, 2013. Briefing concluded on all the motions on November 15, 2013, at which time this Court took them under consideration.

### III.  DISCUSSION

**A.     Rule 12(b)(6)**

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Federal pleading standards are generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8(a)(2).  But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 127 S. Ct. 1955, 1966, 167 L. Ed. 2d 929 (2007).

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. ATSI Commc'ns, 493 F.3d at 98. Legal conclusions, however, are not afforded the same presumption of truthfulness. See Iqbal, 556 U.S. at 678 ("The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.").

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or a "formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Id. at 678; Fed. R. Civ. P. 8(a)(2). Well-pleaded allegations must nudge the claim "across the line from conceivable to plausible." Twombly, 550 U.S. at 570.

**B.      Defendants' motion to dismiss[4]**

In essence Plaintiff contends that Defendants are liable for placing an unreasonably dangerous product in the stream commerce and for failing to warn of its dangerousness. To this end, she brings three causes of action: negligence (and gross negligence), strict products liability, and failure to warn.

To state any of these claims, a plaintiff must plausibly plead that her injury was a result, was a proximate cause, of the defendant's conduct. See, e.g., Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107, 450 N.E.2d 204, 208 (1983). Defendants contend that Plaintiff has not adequately alleged that their HFCS – and not one of the many other factors that can lead to the development of Type 2 diabetes – plausibly caused (or was a substantial factor in causing) her disease. They therefore argue that the complaint must

---

[4] All parties apply New York law. Plaintiff resides in New York and presumably consumed HFCS in New York. Thus, sitting in diversity, this Court will apply New York law. See, e.g., Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (implied consent to New York law sufficiently answers any choice-of-law question).

be dismissed for failure to plead proximate causation.

"Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. 662 at 679. And where "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." Id. (citing Fed. R. Civ. P. 8(a)(2)).

As Defendants point out, Type 2 diabetes is a multifactorial disease. It can be caused by, for example, a lack of exercise, genetics, or poor diet – or some combination of several factors. No expert opinion is required to arrive at this conclusion. See id., 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief . . . requires the reviewing court to draw on its judicial experience and common sense."). Yet, even accepting the allegations in the complaint as true, there is little in it to suggest that Plaintiff could prove that her consumption of some foods containing HFCS over the course of her life was a substantial factor in causing Type 2 diabetes. In other words, aside from idly listing various common foods she has eaten, Plaintiff offers limited facts that might lead this Court to believe that she could ultimately show that it was her consumption of these foods, and specifically the HFCS found within these foods (manufactured by these defendants) that led to her disease. One treatise captures this problem in a manner that calls to mind the now-relevant pleading standard by noting that "[a] mere possibility of such causation is not enough." WILLIAM L. PROSSER, LAW OF TORTS § 41 (4th ed.1971); see Twombly, 550 U.S. at 557–58 ("[W]e explained that something beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a largely groundless claim be allowed

to take up the time of a number of other people, with the right to do so representing an in terrorem increment of the settlement value."). It may be possible that HFCS caused Plaintiff to develop Type 2 diabetes, but (based on the facts in the complaint) is it plausible?

In a case brought against McDonald's for its high-fat content food in the Southern District of New York, the court there essentially answered this question in the negative; it found that the plaintiffs failed to plead proximate causation. Pelman ex rel. Pelman v. McDonald's Corp., No. 02 CIV. 7821 (RWS), 2003 WL 22052778, at *12 (S.D.N.Y. Sept. 3, 2003). Specifically, the district court found that the plaintiffs failed to "isolate the particular effect of McDonald's foods on their obesity and other injuries," and thus dismissed the case under Rule 12(b)(6). Id. In other words, the plaintiffs failed to show through their pleadings that McDonald's foods could have been a substantial factor in causing their obesity. Although the Second Circuit reversed, finding that "this sort of information [] is appropriately the subject of discovery," 396 F.3d 508, 512 (2d Cir. 2005), that ruling's "continuing viability is open to question in view of the Supreme Court's subsequent interpretation of the requirements of Rule 8(a)." Lovell v. GEICO Gen. Ins. Co., No. 12-CV-00546 A M, 2013 WL 7871497, at *5 (W.D.N.Y. Mar. 29, 2013) (McCarthy, M.J.). Indeed, the concept that implausible claims can be weeded out in discovery, a concept highlighted by the Pelman panel ("Th[e] simplified notice pleading standard of Rule 8(a) relies on liberal discovery rules and summary judgment motions to . . . dispose of unmeritorious claims," the panel wrote), was dispelled by Iqbal and Twombly. The Supreme Court held in Twombly that "[i]t is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery

process. 550 U.S. at 559. The Iqbal Court echoed that sentiment: "only a complaint that states a plausible claim for relief" can "unlock the doors of discovery." 556 U.S. at 679.

But even assuming Plaintiff could surpass this hurdle, her claims fail for other reasons.

### 1. Market-share liability does not apply

In response to Defendants' arguments that Plaintiff has engaged in impermissible group pleading – that is, making undifferentiated allegations against the defendants as a group without identifying any wrongdoing on the part of any particular defendant – Plaintiff effectively concedes as much, but asserts that her claim should not be dismissed on this ground because she is proceeding under the doctrine of market-share liability.

Although the New York Court of Appeals has not determined whether market-share liability would apply in a situation such as this, this Court finds that New York would not permit Plaintiff to proceed under that theory.[5]

Market-share liability, which has been "sparingly adopted," Matter of New York State Silicone Breast Implant Litig., 166 Misc. 2d 85, 88, 631 N.Y.S.2d 491, 493 (Sup. Ct. 1995), "provides an exception to the general rule that . . . a plaintiff must prove that the defendant's conduct was a cause-in-fact of the injury." Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 240, 727 N.Y.S.2d 7, 750 N.E.2d 1055 (2001). When the theory is permitted, "a defendant may be held liable absent any showing that it caused or contributed to the plaintiff's injury; instead, a defendant may be presumed liable to the extent of its share of the relevant product market." In re Methyl Tertiary Butyl Ether (MTBE)

---

[5] "Where there is no decision by the state's highest court[,] then federal authorities must apply what they find to be the state law after giving 'proper regard' to relevant rulings of other courts of the State." Travelers Ins. Co. v. 633 Third Associates, 14 F.3d 114, 119 (2d Cir. 1994) .

Products Liab. Litig., 725 F.3d 65, 115 (2d Cir. 2013) (citing Hymowitz v. Eli Lilly & Co., 73 N.Y.2d 487, 511–12, 541 N.Y.S.2d 941, 539 N.E.2d 1069 (1989)); see also New York Tel. Co. v. AAER Sprayed Insulations, Inc., 250 A.D.2d 49, 54, 679 N.Y.S.2d 21, 25 (1st Dep't 1998) ("[T]he burden of proof may shift upon a mere showing that the defendants were engaged in manufacturing the product at issue, without reference to any proof that it was their particular product that caused injury to the plaintiff.").

In New York, the doctrine finds its roots in Hymowitz, where the New York Court of Appeals held that "plaintiffs injured by the drug DES were not required to prove which defendant manufactured the drug that injured them but instead, every manufacturer would be held responsible for every plaintiff's injury based on its share of the DES market." Hamilton, 96 N.Y.2d at 240.

"Key" to the court's decision in Hymowitz "were the facts that (1) the manufacturers acted in a parallel manner to produce an identical, generically marketed product; (2) the manifestations of injury were far removed from the time of ingestion of the product; and (3) the Legislature made a clear policy decision to revive these time-barred DES claims." Hamilton, 96 N.Y.2d at 240. "New York courts have declined to apply the theory in cases that do not meet that criteria." Moreno v. Am. Home Products, Inc., No. A-3935-07T2, 2010 WL 4028605, at *6 (N.J. Super. Ct. App. Div. July 12, 2010) (citing Hamilton, 96 N.Y.2d 222). In fact, New York's highest court has "refused to recognize [market-share liability] in any other context." Enright by Enright v. Eli Lilly & Co., 77 N.Y.2d 377, 385, 570 N.E.2d 198, 202 (1991).

Plaintiff contends she ought to be able to proceed under this theory because HFCS is a fungible product and she cannot identify which company manufactured the HFCS that

she consumed. But "[i]nability to locate evidence [] does not alone justify the extraordinary step of applying market share liability." Hamilton, 96 N.Y. 2d 241. And fungibility is only one factor germane to the analysis. The other two "key" factors are absent here; there is no claim that the "manifestations of injury were far removed from the time of ingestion of the product" and certainly there has been no legislation suggesting an overriding public interest in allowing claims like this to proceed in this manner. Plaintiff does not argue otherwise.

Other considerations contemplated in determining if a plaintiff can proceed under this theory are also lacking. The Fourth Department of New York's Appellate Division identified those factors in Brenner v. Am. Cyanamid Co., 263 A.D.2d 165, 171, 699 N.Y.S.2d 848, 852 (4th Dep't 1999). Weighing each factor, the Brenner court concluded that application of the market-share theory was inappropriate for claims against manufacturers of lead used in lead-based paint.

Like Brenner – but unlike Hymowitz – here there is no "signature injury" definitively linking the product to the harm – as adenosis is linked to DES, mesothelioma is linked to asbestos, or emphysema is linked to cigarette smoke. The Brenner court's finding on this point is applicable here. It rejected the plaintiff's claim because the plaintiff's "injuries could have been caused by some source other than [the alleged defective product]." 263 A.D.2d at 173; see also Giles v. A. Gi Yi, 105 A.D.3d 1313, 1318, 964 N.Y.S.2d 319, 323 (4th Dep't 2013) (dismissing complaint because, among other reasons, the injuries alleged "could have been caused by some source other than lead").

Another factor "considered by the court in Hymowitz was the exclusive control of DES manufacturers over any risk produced by their product." Brenner, 263 A.D.2d at 172. But here, again like Brenner, manufacturers of HFCS do not have exclusive control of the

risk. There is no dispute that the makers of the end-products – not the defendants – decide "what quantities" of HFCS to use, just as the manufacturers of the paint – and not the manufacturers of the lead – decided how much lead to use.

Because these factors, some deemed "key," are absent on the face of Plaintiff's complaint, and considering the telling fact that New York has not recognized market-share liability as a permissible theory of recovery outside the DES context (a context which the New York Court of Appeals stressed was "singular"), this Court concludes that New York would not allow Plaintiff to recover under a market-share theory in this case. Because Plaintiff concedes that this is *the* theory under which she seeks recovery, her claims – whether for negligence, strict liability, or failure to warn – must be dismissed. See, e.g., Zalewski v. T.P. Builders, Inc., No. 1:10-CV-876 GLS/RFT, 2011 WL 3328549, at *5 (N.D.N.Y. Aug. 2, 2011) ("The court will not accept . . . vague group pleading to serve as a basis for liability."). See also Robbins v. Oklahoma, 519 F.3d 1242, 1250 (10th Cir. 2008) ("Given the complaint's use of [] the collective term 'Defendants' . . . with no distinction as to what acts are attributable to whom," the complaint must be dismissed); Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [the plaintiff's] complaint failed to satisfy [Rule 8's] minimum standard.").

### 2. Not unreasonably dangerous

There is a second reason why this complaint must be dismissed even if causation is adequately pled: Plaintiff fails to plead that HFCS is unreasonably dangerous.

Plaintiff points to the high concentration of fructose in HFCS as the source of her illness. HFCS, she alleges, is more dangerous than sugar because of the way fructose is

processed in the body. (See, e.g., Am. Compl. ¶ 28) ("Since fructose is metabolized differently than glucose, it can and does lead to insulin resistence."). But fructose is a naturally occurring compound, found in everyday, commonly-consumed fruits like grapes and pears. Certainly Plaintiff is not suggesting that these fruits are "toxic" substances. Yet this is precisely what Plaintiff appears to suggest: she does not distinguish between fructose found in fruit and fructose found in HFCS; rather, she alleges that "[f]ructose" – *not high-fructose corn syrup* – "is a major cause of metabolic syndrome and type 2 diabetes." (Am. Compl. ¶ 52.) The studies attached to Plaintiff's amended complaint, on which she relies in bringing this claim, naturally arrive at the same conclusion: it is the *over-consumption* of *fructose* that may lead to increased obesity and other adverse health effects. See Miriam E. Borcarsly, *et al.*, *High-fructose corn syrup causes characteristics of obesity in rats: Increased body weight, body fat, and triglyceride levels,* 97 Pharmacology, Biochemistry and Behavior, 101-06 (2010) (concluding that "*over-consumption* of HFCS could very well be a major factor in the 'obesity epidemic' because *fructose* is processed differently than sucrose) (emphasis added); Theodore J. Angelopoulos, *et al.*, *The Effect of High-Fructose Corn Syrup Consumption on Triglycerides and Uric Acid*, The Journal of Nutrition (Supplement) (2009) ("There is considerable evidence of a detrimental effect on metabolic health of *excess fructose consumption*."). (Emphasis added.)

But even accepting this premise as true, it alone does not state a products-liability claim. To be liable, Defendants' product must be "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it." Restatement (Second) of Torts § 402A (1965). If there is no difference between HFCS and simple fructose, HFCS can hardly be said to be unreasonably dangerous. As the Second

Restatement of Torts memorably puts it: "good butter is not unreasonably dangerous merely because, if such be the case, it deposits cholesterol in the arteries and leads to heart attacks." Id. Indeed, "many products cannot possibly be made entirely safe for all consumption, and any food or drug necessarily involves some risk of harm, if only from over-consumption." Id. Particularly relevant to that final point is the uncontested fact that Defendants – as manufacturers of HFCS – do not control how much HFCS is used in the finished products that Plaintiff consumed.

Each cause of action therefore must be dismissed because the amended complaint fails to plausibly allege that HFCS is unreasonably dangerous. See Affuso v. Crestline Plastic Pipe Co., Inc., 194 A.D.2d 884, 885, 599 N.Y.S.2d 157, 158 (1993) (dismissing claims because "[p]laintiffs [] failed to show that [the defendant] breached a duty of care owed to plaintiff by placing a defective, *unreasonably dangerous* product on the market, with actual or constructive notice of the defect, due to a mistake in the manufacturing process, improper design or because of a failure to warn") (emphasis added).

### 3.     No safer alternative pled

Finally, regarding Plaintiff's claims for negligence and design defect, there is a third reason why this case must be dismissed even if the complaint adequately pleads causation.

Under New York law, in addition to a claim for failure to warn, a plaintiff may make two types of claims sounding in strict products liability: (1) a manufacturing defect, which results when a mistake in the manufacturing process renders a product that is ordinarily safe dangerous, and (2) a design defect, which results when the product as designed is not reasonably safe for its intended or foreseeable use. Caruolo v. A C & S, Inc., No. 93

CIV. 37529 RWS, 1999 WL 147740 (S.D.N.Y. Mar. 18, 1999) (citing Voss, 59 N.Y.2d at 106–07).

Plaintiff does not distinguish between manufacturing-defect and design-defect claims, but only a design-defect claim would be appropriate based on the facts alleged in her complaint; she is not claiming that there was some mistake or error in the manufacturing process.[6]

"To state a claim for defective design under New York law, a plaintiff must allege: (1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." DiBartolo v. Abbott Labs., 914 F. Supp. 2d 601, 621 (S.D.N.Y. 2012) (internal quotation marks omitted).

Plaintiff's claim here fails at the second prong; she does not attempt to allege how HFCS could be made safer. If, as Plaintiff suggests, it is the elevated levels of fructose in HFCS that make it unreasonably dangerous, then it is at least conceivable that a formulation of HFCS with lower levels of fructose would be a safer alternative. But Plaintiff fails to allege as much. Instead she argues that all HFCS – even those formulations with a lower fructose-to-glucose ratio than sugar – is unsafe, regardless of its composition. "High Fructose Corn Syrup in varying and multiple concentrations," she alleges, "was not reasonably safe and not fit for the ordinary purposes for which it was used." (Am. Compl.

---

[6]This applies to her negligence claim too. "In a defective design cause of action, a claim for negligent design defect is functionally synonymous with a claim for strict products liability with respect to the manufacturer." Rose v. Brown & Williamson Tobacco Corp., 53 A.D.3d 80, 94, 855 N.Y.S.2d 119 (1st Dep't 2008) (Catterson, J., dissenting) (citing Denny v. Ford Motor Co., 87 N.Y.2d 248, 258, 639 N.Y.S.2d 250, 662 N.E.2d 730 (1995)).

¶ 80.) This contradicts her earlier claim that HFCS is more dangerous than sugar *because* of its elevated levels of fructose and it fails to demonstrate how HFCS' risks could be removed without destroying its utility. See. e.g., Voss, 59 N.Y.2d at 109; see also DiBartolo, 914 F. Supp. 2d at 623 (dismissing design-defect claim on a 12(b)(6) motion because plaintiff failed to adequately allege a safer alternative design).

Plaintiff might be suggesting that HFCS should not be used at all, and that sugar ought to be used in its place. But such an "impos[ition] [of] state law tort liability on the manufacture and sale of [HFCS] now on the market" would constitute "a virtual ban on [HFCS]." Clinton v. Brown & Williamson Holdings, Inc., 498 F. Supp. 2d 639, 648 (S.D.N.Y. 2007) (discussing failure of plaintiff to show that there was a feasible alternative design for cigarettes). The Clinton court went on, "The vast majority of courts have been markedly unreceptive to the call that they displace markets, legislatures, and governmental agencies by decreeing whole categories of products to be 'outlaws.'" Id. Finally, it concluded emphatically, "This is exactly the type of claim that Voss's alternative feasible design requirement was meant to disallow." Id. Thus, if the only alternative is an outright ban, no design-defect claim will stand. For this reason too, the negligence and design-defect claims must be dismissed.

### IV. CONCLUSION

Plaintiff brings causes of action for negligence, design defect, and failure to warn against several makers of high-fructose corn syrup. Each of those claims, however, must be dismissed for several reasons, including Plaintiff's failure to plead that HFCS is unreasonably dangerous and her failure to connect her disease to the actions of any one defendant.

Plaintiff's claims for negligence and design defect must be dismissed for an additional reason: she has not alleged that there exists a feasible safer alternative method for the manufacture of HFCS.

Accordingly, Defendants' motions are granted and the complaint is dismissed.

## V.  ORDERS

IT HEREBY IS ORDERED, that Plaintiff's motion for leave to amend her complaint (Docket No. 28) is GRANTED.

FURTHER, Defendants' motions to dismiss (Docket Nos. 21, 25), construed against the amended complaint, are GRANTED.

FURTHER, that the Clerk of Court is directed to close this case.

SO ORDERED.

Dated:    April 21, 2014
          Buffalo, New York

                                        /s/William M. Skretny
                                        WILLIAM M. SKRETNY
                                        Chief Judge
                                        United States District Court